## Case No. 16,657.

### UNITED STATES v. WEBER.

[Hoff. Land Cas. 126.] [1]

District Court, N. D. California. Dec. Term, 1855.

#### MEXICAN LAND GRANT—VALIDITY.

The validity of this claim established by the ruling of the supreme court in Fremont v. U. S. [17 How. (58 U. S.) 542].

[This was a claim by Charles M. Weber for Campo de los Franceses. Claim filed May 31, 1852, confirmed by the commission April 17, 1855.]

S. W. Inge, U. S. Atty.
Volney E. Howard, for appellee.

HOFFMAN, District Judge. The claim in this case was confirmed by the board of commissioners. An appeal to this court has been taken on the part of the United States; but no objections to the claim have been stated, nor has any error in the decision of the board in matters of law or fact been suggested for our consideration. No additional testimony has been taken in this court, and the case has been submitted without argument, except a printed copy of the brief filed by the counsel

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

for the claimants when the cause was pending before the commissioners. I have, however, as has been my practice, examined the voluminous transcript in the case, but have not discovered any reason for reversing the decision of the board. On the fourteenth of July, 1843, Guillermo Gulnac petitioned Governor Micheltorena for a tract of land eleven leagues in extent, for the benefit of himself and eleven other families, who were to assist him in forming a settlement upon the land. The secretary, Jimeno, to whom the governor made the usual reference for information, reported on the twenty-eighth of November, 1843, that although Gulnac's petition was entitled to favorable consideration, yet it should be ascertained whether the petitioners desired the land for the formation of a colony; and that in that case the names of the persons who were to form it should be mentioned, in order that it might be expressed in the title that the grant was for their common benefit; but if the land was solicited for the personal benefit of the petitioner, that its extent was large, and others, following his example, might obtain similar grants, so that no public land would be left. In conformity with this report, the governor ordered that the petitioner should say whether the grant was asked for a colony, and that in that case the names of the families should be stated in the title; but if he desired it for himself individually, that he should ask for it within reasonable limits. This order was made on the first of January, 1844; but on the thirteenth the governor seems to have made his concession to the petitioner individually, and to the whole extent of land asked for. The concession, it is true, recites that the grant is for the benefit of Gulnac and his family and that of eleven other families; but their names are not mentioned, as previously suggested by the secretary, and it may be presumed that the governor finally determined to grant the land to Gulnac alone, leaving him to make such arrangements with the families who were to settle upon the land as he might see fit.

The foregoing facts appear from the expediente on file in the archives, a copy of which is contained in the transcript. The original title delivered to the party is also produced by the claimant, and the genuineness of the signatures fully proved. It also appears from the certificate attached to the original grant that the grant was approved by the departmental assembly on the fifteenth of June, 1846. By virtue of this approval the title of the petitioner became "definitively valid," and the legal estate in fee vested in the grantee. Whether in such a case this court has any right to inquire into a breach of the conditions subsequent annexed to the grant, for the purpose of enforcing any forfeiture for conditions broken which may have accrued, it is unnecessary to consider; for the evidence in this case abundantly shows that the grantee and the present claimant, who derives title from him, made every possible exertion to ful-

fill the conditions of the grant, and that though embarrassed by unforeseen obstacles, they effected an extensive settlement upon the land before the country was ceded to the United States by the treaty. The excuses for non-performance of conditions within the time limited are at least as valid as those which were in the case of Fremont v. U. S. [17 How. (58 U. S.) 542] held sufficient under a grant not approved by the assembly, and in this case it appears in addition that the conditions were fully performed, and in fact a future city founded before the formal acquisition of the country. No objections having been made on the part of the United States, I do not deem it necessary to refer particularly to the evidence by which the existence of unforeseen obstacles to an immediate settlement is established, nor to that which proves the extensive improvement, occupation and cultivation which ensued, and which exist to the present day. The boundaries of the grant are indicated with apparent precision in the grant and map which accompanies it, and its extent is limited to eleven leagues. A decree of confirmation for land to that extent, within the boundaries set forth in the grant and accompanying diseño, must therefore be entered.

[For hearing upon objections to survey, see Case No. 17,329. A new survey was made and confirmed. Id. 17,328.]